NEW JERSEY DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

</div>

ADOLF GUTMAN, PETITIONER, v. ADOLPH SCHREPFER, RESPONDENT.

**Cut on Hand—Infection Set In—Question of Relationship of Employer and Employe—Casual Employment Claimed—Contract Work Changed to Day Work—Compensation Allowed.**

On findings of fact and rule for judgment.

A formal petition for compensation under the Workmen's Compensation act was duly filed herein, process was duly served, and thereafter the matter duly came on before me for trial at Paterson on January 29th, 1925. The petitioner appeared by Kent & Kent (Samuel Kent, of counsel); the respondent appeared by Isidore Rabinowitz, Esq.

I hereby find and determine as follows:

1. The petitioner, Adolf Gutman, was an all-around mechanic.

2. He owned no business of his own, nor was he engaged in any business of his own.

3. He had no business address, and resided at his home at 116 Alabama avenue, Paterson, New Jersey.

4. On or about July 11th, 1924, he had a talk with Adolph Schrepfer, the respondent, at the latter's place of business, which is a store at No. 80 Main street, Paterson, concerning certain painting work to be done at the latter's home at No. 383 East Thirty-first street, Paterson. Certain specific work, pertaining to the painting of certain window frames, was discussed, at which time the petitioner agreed to do the work for fifty and 00/100 dollars ($50), with the understanding that all paints and materials were to be bought and paid for by the respondent. This arrangement was satisfactory to the respondent, and, accordingly, on July 11th, the petitioner commenced work. The respondent resided at this address with his family. During the course of work, on the first day, several changes and additional work were requested by the wife of the respondent. The petitioner then communicated with the respondent and informed him of the additional work that was requested, and it was then and there agreed between the petitioner and the respondent that the original understanding that petitioner be paid $50 for his work be terminated and canceled, and that the petitioner continue to work and that he be paid wages at the rate of nine and 00/100 dollars ($9) per day, amounting to forty-nine and 50/100 dollars ($49.50) for a five and one-half day week. This arrangement was satisfactory to the petitioner, and he continued to so work, reporting at eight o'clock in the morning, taking off an hour for lunch time, and working till five o'clock in the afternoon. The house was owned by Mr. Schrepfer. Mr. Gutman ordered some of the paint, the balance was ordered by Mr. Schrepfer, but all bills were sent to Mr. Schrepfer and were paid by him. None of the paint or materials were billed to Mr. Gutman, nor were any of these items charged to Mr. Gutman, nor were they paid for by him, nor was any charge or claim made by Mr. Schrepfer against Mr. Gutman for any of these items.

Mr. Gutman had complained to Mr. Schrepfer that it was very difficult to do the work alone, whereupon Mr. Schrepfer engaged one William Meyerhofer to work also. Mr. Meyer-

hofer was employed directly by Mr. Schrepfer, who paid him weekly wages for his work. During the course of the employment aforesaid, and while so working, on July 21st, the petitioner was opening a can of paint that was to be used in connection with the work, when he cut the second finger of his right hand with the jagged edge of the tin container. The wife of the respondent was in the house, and, in fact, applied home treatment to the cut. Mr. Schrepfer also knew of the happening of the accident. Petitioner, however, continued to work, because at that time the injury was not at all serious. Both petitioner and Mr. Meyerhofer continued doing painting work and other general work in and about the house. Both Mr. and Mrs. Schrepfer at all times gave specific instructions as to what work was to be done and how it was to be done, and both of them absolutely controlled and supervised the manner and method of the work. At one time, Mr. Schrepfer threatened to fire both of the men for the reason, as he claimed, that they were not working fast enough and were not earning their wages. After the painting work was completed, Gutman and Meyerhofer were put to work taking out a rotted cross-beam in the cellar of the house and replacing the same with a new beam. Mr. Schrepfer purchased the beam and had it delivered to the house. After this work was finished, the men were put to work repairing the parquet floors in the home. After some work was done on the parquet floors, Mr. Gutman was sent by Mr. Schrepfer to do some work in the Schrepfer store on Main street, and continued to work under the direction and supervision of Mr. Schrepfer. Payment of the wages of both men was made by Mr. Schrepfer by checks, which were issued regularly and, approximately, weekly. It is true that the first check issued to Mr. Gutman was for more than the sum that represents a week's wages, but I am satisfied that this check was the first one issued to him and was in payment of wages covering a period of approximately two weeks. Mr. Schrepfer testified that the first check issued represented full payment to Mr. Gutman for work done upon an express

contract. In the face of this conflicting testimony, I am satisfied that there was no express or independent contract existing at the time, and that this check was issued in payment of wages due.

6. Mr. Gutman continued to work until some time in September, when he was forced to abandon all work on account of the serious condition that had developed in the finger.

7. A further factor has dispelled whatever doubt I may have had regarding the relationship of employer and employe in this matter. Mr. Schrepfer himself testified, on examination by his own attorney, that he had instructed his attorney (Mr. Rabinowitz) to make an offer of five hundred and fifty and 00/100 dollars ($550) to the attorneys for the petitioner in settlement of the action. This offer was made in court at a prior hearing in the presence of the referee then sitting. This offer of payment was made without any qualification or limitation. The permissible inference is therefore that the respondent recognized the relation of employer and employe, and it will not be presumed that this offer of five hundred and fifty and 00/100 dollars ($550) was by way of a gratuitous offer. The respondent raised the proposition upon the trial that the employment, if such was the relationship, was casual, and not such as is contemplated under the Compensation act. The employment continued for a considerable period, continuously, up to the time of the accident, and for a considerable period following the happening of the accident. The employment was not, therefore, casual.

8. I am further aided in making my findings in this matter after seeing and observing the demeanor of the witnesses for the respective parties upon the witness-stand.

9. Following the laceration of the finger in the accident, an infection set in. The finger became very much swollen at the second phalange. The phalangeal joint at this point is totally and permanently obliterated on account of the ankylosis that has developed. The finger, therefore, is stiff and straight. It is true that he has slight function at the

metacarpal-phalangeal joint, which is the point where the finger joins the hand, but on account of the loss of use and function of the middle joint of the finger, the extent of use and function of the finger is *nil;* in fact, on account of the stiffened condition and the fact that the finger is straight and protrudes away from the direction in which the rest of the fingers bend, petitioner has a condition which is worse than if the finger had been amputated entirely. It is my opinion that the condition of the petitioner's hand will be benefited by having the finger amputated, but that is a matter which, of course, rests with the petitioner. Petitioner received extensive treatment from approximately the date of the accident down to and including the present time. Even after the permanent stiffness developed, he continued to receive treatment in an endeavor to diminish the swelling at the joint. This swelling has been diminished to a considerable extent, although the joint at this point is still abnormally large. I feel that a period of ten (10) weeks is sufficient to cover his period of temporary disability.

10. I find that the reasonable value of the medical services rendered to him is one hundred dollars ($100).

11. I find, therefore, that the petitioner was injured in an accident arising out of and during the course of his employment; that respondent had due knowledge and notice of the accident; that petitioner's wages at the time were forty-nine and 50/100 dollars ($49.50) per week; that he was temporarily disabled for a period of ten (10) weeks; that he has suffered one hundred per cent. permanent loss of use of the second finger of the right hand.

\*  \*  \*  \*  \*  \*  \*  \*  \*

HARRY J. GOAS,
*Deputy Commissioner.*